**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| **ADVICE MEDIA, LLC dba MY ADVICE,**<br><br>**Plaintiffs,**<br><br>vs.<br><br>**GOPHER MEDIA LLC dba DOCTOR MULTIMEDIA, CONNOR MORRIS and DREW NGUYEN,**<br><br>**Defendants.** | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:25-CV-129-DAK-DAO<br><br>Judge Dale A. Kimball<br><br>Magistrate Judge Daphne A. Oberg |

This matter is before the court on Defendants Gopher Media LLC, Connor Morris, and Drew Nguyen's Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(2) and Federal Rule of Civil Procedure 12(b)(6) [ECF No. 32]. On April 2, 2026, the court held a hearing on the motion. At the hearing, Plaintiff Advice Media. LLC was represented by Jonathan W. Gold, Defendants Gopher Media, LLC, and Drew Nguyen, were represented by Kennedy D. Nate, and Defendant Connor Morris was represented by Nicholas Wilde. The court took the motions under advisement. After carefully considering the memoranda filed by the parties and the law and facts pertaining to the motion, the court issues the following Memorandum Decision and Order.

## BACKGROUND

Plaintiff Advice Media, LLC, does business as MyAdvice, and Defendant Gopher Media LLC does business as Doctor Multimedia ("DMM"). The companies are competitors. DMM is a digital marketing agency supplying internet and online marketing services to pharmacies, veterinarians, chiropractors, dentists, and doctors nationwide, including website development,

content creation, social media management, online review management, and email marketing.

MyAdvice's corporate headquarters are in Utah and many of its officers and employees are based in Utah. DMM is a Nevada company with its principle place of business in San Diego, California. Defendant Connor Morris was a MyAdvice employee from May 5, 2020, until January 13, 2023, and then became a DMM employee. While employed with MyAdvice, Morris lived in Summit County, Utah, and worked in MyAdvice's Park City, Utah office. Defendant Drew Ngyuen works for DMM and resides in San Diego, California. My Advice claims that Morris and Ngyuen disparaged MyAdvice, stole clients from MyAdvice, and diverted those clients to DMM.

At the outset of his employment, Morris signed an Offer Letter and an Agreement to Protect Information, Assign Inventions, and Prevent Unfair Solicitation (the "Agreement"). In the Offer Letter, MyAdvice agreed to compensate Morris at an agreed upon rate, to provide him with certain benefits, and Morris agreed to keep the terms and conditions of his employment confidential. In the Agreement, Morris agreed that information concerning MyAdvice's business, technology, business relationships, or financial affairs that MyAdvice had not released to the general public was proprietary information that would remain MyAdvice's exclusive property. Morris agreed that either during his employment or after his employment, he would not disclose any proprietary information to anyone outside MyAdvice for any purpose other than to perform his MyAdvice duties.

During his employment, Morris had access to MyAdvice client lists. In the Agreement, Morris also agreed that for 12 months after his employment, he would not solicit, divert, or take away any of MyAdvice's customers or prospective customers. If he violated this non-solicitation provision during the restricted period, the period would be extended by such violation. Morris also agreed not to disparage MyAdvice or interfere with MyAdvice's relationships with its customers,

prospectively.

Both the Offer Letter and the Agreement contain a forum selection clause. Morris agreed to be subject to Utah law and to personal jurisdiction and venue in Utah's courts.

Almost immediately after his employment with MyAdvice ended, MyAdvice alleges that Morris began contacting MyAdvice's clients and inappropriately tried to solicit those clients and steal their business for DMM. MyAdvice's clients informed MyAdvice that Morris made false and misleading statements to them. My Advice's clients have informed it of at least 27 calls from DMM employees. Morris and Nguyen also sent texts and emails to some of MyAdvice's clients. MyAdvice alleges that Morris and Nguyen would claim to be MyAdvice employees to get past gatekeepers and then talk to actual MyAdvice clients and business owners, selling that client or business owner on using DMM instead of MyAdvice. Morris and Nguyen would also insinuate that there was an emergency of some kind and claim that MyAdvice had issues with its website and marketing. MyAdvice alleges that DMM authorized Morris and Nguyen to use these false statements to steal MyAdvice business, either via ratification or express approval.

MyAdvice claims that Defendants' false statements and business interference caused MyAdvice to lose at least eight clients that MyAdvice is aware of, six of which are based in Utah. MyAdvice alleges that Defendants persuaded these six Utah-based clients to terminate their business relationships with MyAdvice and, from what MyAdvice can tell, enter into new contracts with DMM. MyAdvice's relationships with these Utah clients generated $6,060.30 in revenue per month, which has now been lost.

In December 2014, DMM attended the American Association for Equine Practitioners Convention in Salt Lake City, Utah, to solicit business from convention attendees, including Utah veterinarians. MyAdvice also alleges that DMM has engaged in repeated interactions and

transactions with Utah residents and businesses, including Utah-based businesses it stole from MyAdvice.

MyAdvice brought this lawsuit against Defendants, alleging breach of contract against Morris, intentional interference with economic relations against Morris and Nguyen, violation of the Lanham Act and violations of California Business and Professions Code § 17200 and a claim for civil conspiracy against Morris, Nguyen, and DMM, and a respondeat superior claim against DMM.

## DISCUSSION

### Defendants' Motion to Dismiss

Defendants move to dismiss the case for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), or in the alternative, to transfer venue pursuant to 28 U.S.C. § 1404(a). If the court finds jurisdiction and decides not to transfer venue, Defendants move to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

### 1. Jurisdiction

Defendants argue that this court cannot hear this dispute because it does not have personal jurisdiction over them. "The law of the forum state and constitutional due process limitations govern personal jurisdiction in federal court." *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017). Utah's long-arm statute extends to the limits of due process. Accordingly, the issue is whether asserting jurisdiction violates due process. "Due process requires both that the defendant 'purposefully established minimum contacts within the forum State' and that the 'assertion of personal jurisdiction would comport with "fair play and substantial justice.'"" *Id.* (citations omitted).

MyAdvice does not allege that there is general jurisdiction over Defendants in Utah.

4

Therefore, the court must only determine whether there is specific jurisdiction over each Defendant. "Specific jurisdiction means that a court may exercise jurisdiction over an out-of-state party only if the cause of action relates to the party's contacts with the forum state." *Id.*at 904. "Specific jurisdiction calls for a two-step inquiry: (a) whether the plaintiff has shown that the defendant has minimum contacts with the forum state; and, if so, (b) whether the defendant has presented a 'compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Id.* (citation omitted).

"The minimum contacts test for specific jurisdiction encompasses two distinct requirements: (i) that the defendant must have 'purposefully directed its activities at residents of the forum state,' and (ii) that 'the plaintiff's injuries must arise out of [the] defendant's forum-related activities.'" *Id.* (citation omitted). The purposeful direction requirement applies "'where the defendant deliberately has engaged in significant activities within a State," and has therefore "availed himself of the privilege of conducting business there.'" *Id.* at 905. Under the *Calder* effects test, a plaintiff can demonstrate purposeful direction if there was "'(a) an intentional action . . . , that was (b) expressly aimed at the forum state . . . , with (c) knowledge that the brunt of the injury would be felt in the forum state.'" *Id.* at 907 (quoting *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1072 (10th Cir. 2008)).

"On a motion to dismiss for lack of personal jurisdiction, '[t]he allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits.'" *Id.*at 900. In this case, Defendants did not submit any affidavits controverting any facts alleged in the Complaint. Therefore, the court assumes the facts in the Complaint to be true. Defendants, however, argue that the facts MyAdvice alleged in the Complaint are conclusory jurisdictional allegations rather than well-pled facts that support personal jurisdiction. But the Complaint clearly

5

has facts regarding the individual Defendants targeting known MyAdvice clients by claiming to be MyAdvice employees and then trying to get them to switch companies. Morris knew MyAdvice's clients, he shared that information while employed at DMM, they targeted those clients to switch from MyAdvice to DMM, and they knew that MyAdvice would lose those clients. MyAdvice also lists the amount of business it lost per month from Utah clients that switched to DMM. Those facts are not conclusory jurisdictional facts. They are facts relating to the parties' contacts within the state of Utah. This is not a situation where a plaintiff has merely recited the elements of a claim or made vague allegations that customers were being contacted. MyAdvice listed specific clients, the nature of those contacts, and the damage that it incurred.

Defendants appear to concede that Morris is subject to personal jurisdiction in Utah for the breach of contract claim due to the binding forum selection clause in the Agreement. There are adequate allegations to support jurisdiction on the remaining claims as well. He targeted MyAdvice clients when he agreed not to do so, shared that information with his new employer, who was a competitor, and used misrepresentations to clients to induce them to switch companies. These actions resulted in the loss of eight clients, six of which were Utah-based clients. MyAdvice contends that both Nguyen and DMM are subject to specific personal jurisdiction in Utah because they purposefully directed activities at Utah and caused injuries to MyAdvice, a Utah-based company, through those forum-related activities.

MyAdvice claims that Nguyen is subject to Utah jurisdiction because he allegedly worked with Morris to solicit and establish "continuing relationships" with MyAdvice's Utah-based clients. MyAdvice alleges that Nguyen deliberately targeted MyAdvice's clients, such that he poached several Utah-based clients from MyAdvice, and he caused harmful effects to MyAdvice in Utah based on its loss of clients to DMM through his misrepresentations that he was a

6

MyAdvice employee. The allegation that he claimed to be a MyAdvice employee to gain access to MyAdvice's clients demonstrates that he was targeting MyAdvice. Once obtaining access to the clients through misrepresentations, his aim was to take that client away from MyAdvice. It is a simple inference from the complaint that the only way Nguyen knew of these clients was from information improperly shared with him from former MyAdvice employees who were under a contractual obligation not to share such information. These allegations constitute minimum contacts sufficient to subject Nguyen to specific personal jurisdiction in Utah for the alleged interference with economic relations and related causes of action.

MyAdvice argues that DMM formed minimum contacts with Utah through its agents Morris and Nguyen. DMM is subject to Utah's jurisdiction because it transacted business in Utah through its agents. Utah's Long-Arm Statute extends to "any person or personal representative of the person, whether or not a citizen or resident of this state, who in person or through an agent" acts to transact business in Utah, contracts to "supply services or goods in this state," or causes "any injury within this state." Utah Code Ann. § 78B-3-205(1-3). The Supreme Court has also recognized that "an agency relationship may give rise to contacts sufficient to subject a defendant to personal jurisdiction." *Raser Technologies, Inc. v. Morgan Stanley & Co.*, 2019 UT 44, ¶ 76, 499 P.3d 150 (Utah 2019) (citing *Walden v. Fiore*, 571 U.S. 277, 286 (2014)). DMM's agents created case-relevant minimum contacts between themselves and the State of Utah because these Defendants specifically targeted MyAdvice's customers, including its Utah-based clients, through misrepresentations that they were MyAdvice employees rather than DMM employees, and did so to the detriment of MyAdvice, who lost eight clients to DMM, six of which were Utah based.

DMM is also subject to Utah's jurisdiction because Utah recognizes a conspiracy theory of jurisdiction, and DMM allegedly participated in a conspiracy targeting Utah. The Utah Supreme Court explained, "the acts of a third party—such as an agent—can, in some circumstances, provide a basis to exercise jurisdiction over an out of state defendant." *Id.* at ¶ 79. The court explained that a conspiracy is an agency relationship so an "act taken during the course of conspiracy may lead to specific jurisdiction over a defendant." *Id.*

As long as a defendant can reasonably anticipate being haled into Utah courts, personal jurisdiction under the conspiracy theory satisfies due process. Here, MyAdvice alleges that DMM participated in a conspiracy to solicit and steal the clients of a Utah company through false and misleading statements. Due to its participation in this conspiracy, DMM could reasonably anticipate being haled into Utah court. Therefore, it is subject to jurisdiction in Utah.

Defendants motion seems to be based almost solely on the fact that of the 27 specifically identified calls, none of them was to a Utah-based MyAdvice client. But the Complaint alleges a pattern of using misrepresentations to gain contact with clients in order to convince the client to switch companies and six Utah-based clients were lost as a result of this targeting. The Complaint identifies the six Utah companies by name. The Complaint therefore can only allege that the same type of contacts was made in Utah to cause those six Utah-based clients to switch. The Complaint alleges that there were repeated contacts to Utah-based clients, Defendants knew those clients were MyAdvice clients and knew that the loss of business would harm MyAdvice in Utah. Defendants did not submit any affidavits to controvert MyAdvice's allegations with respect to those six clients or any of the others. The court concludes that those allegations are sufficient to demonstrate that

8

contacts were made to Utah clients with the intent to harm MyAdvice, a Utah company, and with the knowledge that MyAdvice would suffer harm in the State of Utah.

In addition to having minimum contacts with the forum, exercising jurisdiction over Defendants must be fair and reasonable. Courts "inquire whether the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice." *Old* Republic, 877 F.3d at 908. After minimum contacts are established, "it is incumbent on defendants to present a compelling case that the presence of some other consideration would render jurisdiction unreasonable." *Id.* at 909. Courts determine whether "jurisdiction is reasonable by considering the following factors: '(1) the burden on the defendant; (2) the forum state's interest in resolving the dispute; (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies." *Id.* (quoting *Dudnikov*, 514 F.3d at 1080).

It is Defendants' burden to make a compelling case that the presence of some other considerations would render jurisdiction unreasonable. Defendants have not attempted to make such a compelling case. Defendants reached out to Utah-based companies through allegedly improper means to take business away from MyAdvice. There is no argument that Defendants cannot as easily defend an action against them in this forum. Defendants' motion does not assert that exercising jurisdiction would be unfair or unreasonable, only inconvenient. Therefore, the court concludes that exercising jurisdiction over Defendants in Utah based on the allegations of the Amended Complaint would not offend traditional notions of fair play.

The court, therefore, concludes that the Amended Complaint alleges minimum contacts to exercise jurisdiction over Defendants in this court and that such exercise of jurisdiction would not be unreasonable or unfair. Accordingly, Defendants' motion to dismiss for lack of personal jurisdiction is denied.

## 2. Venue

Defendants argue that because this court cannot exercise personal jurisdiction as to all Defendants, the court should transfer the case to the Southern District of California under 28 U.S.C. § 1404(a). However, that is Defendants only arguments as to proper venue and the court has found jurisdiction over all Defendants. Section 1404 requires (1) that "the transferee court is a proper forum in which the action could have been brought originally," and (2) that "the transfer will enhance the convenience of the parties and witnesses, and is in the interest of justice." *Community. Television of Utah, LLC v. Aereo, Inc.*, 997 F. Supp. 2d 1191, 1205 (D. Utah 2014). Defendants have not attempted to meet these requirements. Because there is no evidence that Utah is an inconvenient forum, the court will not disturb Plaintiff's choice of forum. The court cannot focus only on Defendants' convenience. A plaintiff's choice of forum should rarely be disturbed unless the balance of factors is strongly in favor of the movant seeking transfer. *Community Television of Utah, LLC v. Aereo, Inc.*, 997 F. Supp. 2d 1191, 1205 (D. Utah 2014) (citing 28 U.S.C. § 1404(a)). Therefore, the court denies Defendants' motion to transfer venue.

## 3. Rule 12(b)(6) Dismissal

Defendants argue that the Amended Complaint fails to plead a breach of contract claim against Morris, the economic loss rule bars claims against Morris for tortious interference with economic relations and civil conspiracy, the Amended Complaint fails to plead a tortious interference claims against Defendants, the Amended Complaint's allegations sounding in fraud

fail to state a claim under the Lanham Act or UCL, and the Amended Complaint's respondeat superior and civil conspiracy claims present no independent viable grounds for relief.

### A. Breach of Contract

Defendants contend that MyAdvice's several theories of breach fail to demonstrate that any of Morris' alleged conduct breached the Agreement or that MyAdvice suffered resulting damages from the alleged conduct. In Morris' Agreement with MyAdvice, he agreed not to disclose any proprietary information of MyAdvice, including "customer identities," or to use any such information "for any purpose other than the performance of his duties as an employee or consultant" of MyAdvice. He also agreed to a one-year non-solicitation period with respect to MyAdvice customers or potential MyAdvice customers. The Agreement also precludes Morris from "making false and/or misleading statements to MyAdvice's clients." Defendants argue that the clients Morris are alleged to have contacted are not the clients alleged to have been lost so there are no alleged damages.

The Amended Complaint alleges numerous facts supporting a claim that Morris breached the Agreement's duties and, by doing so, caused MyAdvice to suffer damages. The Amended Complaint alleges that Morris was the account manager for three clients who terminated their relationships with MyAdvice and signed contracts with DMM. This allegation requires only a reasonable inference that Morris used his knowledge of MyAdvice clients to approach them on behalf of DMM. The Amended Complaint also lists nine calls Morris made to MyAdvice customers, each of these calls was an alleged breach of the Agreement. In addition, MyAdvice has alleged damages in connection with Morris' alleged breach of the Agreement by alleging specific instances where Morris convinced a client to switch to DMM. MyAdvice also clearly identified the economic injury it suffered as a result. More specific damages can be explored in discovery.

11

Moreover, the breach of contract claim does not sound in fraud. The allegations do not need to be made with particularity. Even if it did, MyAdvice has alleged specific instances of breach. Therefore, the court finds no grounds for dismissing the breach of contract claim against Morris, and Defendants' motion to dismiss that claim is denied.

### B. Economic Loss Rule

Defendants argue that economic loss rule bars MyAdvice's claims against Morris for tortious interference with economic relations and civil conspiracy because the parties' relationship is governed by the Agreement. Under the economic loss rule, "when a conflict arises between parties to a contract regarding the subject matter of that contract, the contractual relationship controls, and parties are not permitted to assert actions in tort in an attempt to circumvent the bargain they agreed upon." *Reighard v. Yates*, 2012 UT 45, ¶ 20, 285 P.3d 1168 (Utah 2018). When a party's tort claim "is a mere duplication of its breach of contract claim" the economic loss rule applies and the "tort claim is barred." *HealthBanc Int'l*, 2018 UT 61, ¶ 10, 435 P.3d 193 (Utah 2018).

"To determine whether the economic loss rule bars a cause of action sounding in tort, [courts] focus on the nature of the duties existing between the parties, and specifically on whether the duties existing between the parties arise as a result of the parties' contract or arise from non-contractual sources. If the tort alleges a breach of duty that the contract itself imposes, then the claim is barred; the plaintiff can sue only for contract-based remedies." *KTM HealthCare Inc v. SG Nursing Home LLC*, 2018 UT App152, ¶ 71, 436 P.3d 151, 170 (Utah Ct. App. 2018).

MyAdvice's claim for tortious interference against Morris alleges breach of a duty that the Agreement imposes and MyAdvice's claim for civil conspiracy is based on the duty not to solicit

MyAdvice's clients through false and misleading statements. MyAdvice, however, contends that the tort claims are based on tort law duties separate and distinct from the duties imposed by the Agreement with Morris.

The Utah Supreme Court's decision in *Grynberg v. Questar Pipeline Co.,* 203 UT 8, 70 P.3d 1 (2003), is instructive on when a tort claim is based on a duty independent of those duties found in the contract. "The fact that the exact same conduct is described in both the contract and tort claims, and the exact same facts and circumstances are at play, is indicative of the overlapping duties in this case." *Id.* at ¶ 53. The same is true here. In the tortious interference with economic relations claim, MyAdvice alleges that Morris had a duty not to solicit MyAdvice clients and not to make false and misleading statements regarding MyAdvice and his relationship with MyAdvice. MyAdvice's civil conspiracy claim similarly alleges that Morris had a duty not to solicit MyAdvice's clients and stealing those clients for DMM through false and misleading statements. MyAdvice's opposition concedes the overlapping nature of the claims by recognizing all three claims require at least a showing that "the defendant solicited the plaintiff's clients or disparaged the plaintiff." Therefore, exactly the same conduct is described in both the contract and tort claims and the exact same facts and circumstances are at play. In such a situation, the economic loss doctrine bars the tort claims against Morris. Accordingly, the court grants Defendants' motion to dismiss the tortious interference and civil conspiracy claims against Morris.

### C. Tortious Interference Claim

Defendants argue that MyAdvice's tortious interference claim against Morris and Nguyen rests on the assertion that these Defendants supposedly interfered with MyAdvice's customer

relationships "through improper means, including false and misleading statements," but the Amended Complaint does not sufficiently identify any potentially improper means with particularity under FRCP Rule 9(b). *PharMerica Chicago, Inc. v. Meisels*, 772 F. Supp. 2d 938, 955 (N.D. Ill. 2011). Rule 9(b) requires that a plaintiff seeking to rely on allegations sounding in fraud must "set for the who, what, when, where and how of the alleged fraud." *U.S. ex rel. Hunt*, 139 S. Ct. 1507, 203 L. Ed. 2d 791 (2019).

A prima facie case of intentional interference with economic relations requires allegations "'(1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations, (2) . . . by improper means, (3) causing injury to the plaintiff.'" *IHC Health Services, Inc. v. ELAP Services, LLC*, 2018 WL 4688358, *3 (D. Utah Sept. 28, 2018) (quoting *Eldridge v. Johndrow*, 2015 UT 21, ¶ 70, 345 P.3d 553.

The Amended Complaint alleges facts which, if accepted as true, establish all three elements. It alleges that Morris and Nguyen specifically targeted MyAdvice clients, contacted numerous MyAdvice clients, and made false statements to those clients—including falsely stating that they worked with MyAdvice in order to even get them to talk with them in the first instance. The Amended Complaint then alleges that Morris and Nguyen told MyAdvice's clients false statements regarding alleged problems MyAdvice was having in an effort to get them to switch to DMM. It also alleges that these actions caused damages by, among other things, convincing at least eight clients to end their relationships with MyAdvice and sign contracts with DMM.

Defendants do not dispute that they interfered with MyAdvice's economic relationships, but they argue that MyAdvice has not described their interference with enough detail. Defendants are right that tortious interference claims based on false and

misleading representations must be pled with particularity. But MyAdvice lacks personal knowledge of Morris and Nguyen's false statements because it was not on the calls where they made these statements. MyAdvice learned about these statements from its clients and included what it was told in the Amended Complaint. Courts have made it clear that less specificity is required where, as here, a plaintiff cannot be expected to have personal knowledge of the facts constituting the wrongdoing. *Arena Land & Inv. Co. v. Petty*, 906 F. Supp. 1470, 1476 (D. Utah 1994), *aff'd* 69 F.3d 547 (10th Cir. 1995).

The Amended Complaint includes more than enough detail regarding the alleged false and misleading statements underlying MyAdvice's tortious interference claim, particularly when read in light of MyAdvice's lack of personal knowledge of exactly what Defendants said during their phone calls with MyAdvice's clients. The Amended Complaint identifies the time of each false statement, the speaker of each false statement, the recipient of each statement, the contents of the statements, and the consequences of the statements. Paragraph 35 lists at least 27 separate phone calls Defendants made and for each call it identifies the date of the call, the caller, and the recipient of the call. Paragraphs 47 through 50 describe the customers and revenue that MyAdvice has lost due to Defendants' interference. This is more than enough detail to survive a motion to dismiss on this claim. Accordingly, the court denies Defendants' motion to dismiss the tortious interference claim against Nguyen.

### D. Lanham Act and UCL Claims

Defendants claim that MyAdvice has not alleged its Lanham Act and UCL claims with sufficient particularity ignores what is actually alleged in the Amended Complaint. The Lanham Act establishes liability for certain false or misleading representations of fact, including false and misleading representations "likely to cause confusion, or to cause mistake, or to deceive as to the

15

affiliation, connection, or association of such person with another person." 15 U.S.C. § 1125. MyAdvice alleges that Morris and Nguyen misrepresented their affiliation with MyAdvice to speak to MyAdvice customers. The Amended Complaint identifies the date, the speaker, the recipient, and the content of each false statement Defendants made and the consequences. Regardless of which standard applies, MyAdvice has met the standard or heightened standard.

The UCL makes it unlawful to make certain untrue or misleading statements and to disseminate such statements as part of a scheme to sell personal property or professional services. Cal. Bus. & Prof. Code § 17200. The false statements alleged in the Complaint are the types of statements prohibited by the UCL and they are specifically identified by date, speaker, and content. The court, therefore, denies Defendants' motion to dismiss the Lanham Act and UCL claims at this stage of the litigation.

### E. Respondeat Superior

"Respondeat superior is not itself a cause of action or a cognizable legal claim." *Gardiner v. United States*, 316 F. Supp. 3d 1308, 1322 (D. Utah 2018). Because it is not an independent claim, the court dismisses it as a standalone claim. But MyAdvice has sufficiently pled a respondeat superior theory of vicarious liability against DMM. The Amended Complaint alleges that Morris and Nguyen were acting within the scope of their employment with DMM, the tasks Morris and Nguyen were employed to perform included tasks described in the Amended Complaint, DMM had the ability to control Morris and Nguyen's conduct, including the conduct described in the Amended Complaint, Moris and Nguyen's conduct occurred during the hours and in the locations of their employment, and their conduct was motivated in whole or in part by the purpose of serving their employer's interests. While respondeat superior is not by itself a claim upon which relief can be granted, the Amended Complaint alleges facts that support holding DMM

16

vicariously liable for its employees' actions with respect to the other tort and statutory claims.

### F. Civil Conspiracy

Defendants also argue that civil conspiracy is not a cause of action. Under California law, civil "conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *Applied Equip. Corp. v. Litton Saudi Arabia LTD.*, 7 Cal. 4th 503, 510-11 (Cal. 1994). Likewise, under Utah law, a plaintiff seeking to plead and prove civil conspiracy must first state, and then prove, five elements: "(1) a combination of two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result thereof." *Israel Pagan Estate v. Cannon*, 746 P.2d 785, 790 (Utah Ct. App. 1987). Thus, Utah law also appears to recognize that, though civil conspiracy may be in certain instances a cognizable claim, it is necessarily a derivative one. Defendants assert that MyAdvice has failed to allege a single "unlawful" or "overt action" by any Defendant that would support a civil conspiracy claim.

While MyAdvice has adequately alleged underlying torts, a corporation cannot conspire with itself or its own agents and the agents of such an entity cannot conspire with the entity itself or other agents as to conduct within the scope of any or all the agent's official or employment duties, *Diamonds Direct, L.C. v. Manly Bands*, No. 2:23-cv-00870, 2024 WL 4818827 (D. Utah Nov. 18, 2024). MyAdvice's allegations for a civil conspiracy all relate to Morris and Nguyen's actions taken for or on behalf of DMM, their employer, in the course of their employment at DMM. Therefore, MyAdvice's civil conspiracy claim fails, even if any independent unlawful overt act was pled. Accordingly, the court grants Defendants' motion to dismiss the civil conspiracy claim.

## CONCLUSION

Based on the above reasoning, Defendants' Motion to Dismiss is GRANTED IN PART AND DENIED IN PART. MyAdvice's tortious interference is dismissed against Defendant Morris, the civil conspiracy claim is dismissed against all Defendants, and the respondeat superior claim is dismissed as a standalone claim as discussed above.

DATED this 30th day of April 2026.

BY THE COURT:

_____
DALE A. KIMBALL,
UNITED STATES DISTRICT JUDGE